[Civ. No. 12978. First Dist., Div. Two. Apr. 10, 1946.]

MARIAN S. DILL et al., Respondents, v. FLETCHER HAMILTON, Appellant.

A. Brooks Berlin and Ralph W. Scott for Appellant.

Hugo D. Newhouse, Russell P. Tyler and Herbert Pothier for Respondents.

NOURSE, P. J.—Plaintiffs sued to enforce a judgment for money. The defendant pleaded a discharge in bankruptcy. The trial was had upon a written stipulation of facts and resulted in a judgment for plaintiffs.

The issue raised on the appeal is whether the debt "was duly scheduled" within section 17 of the Bankruptcy Act (11 U.S.C.A. § 35) and, if not, whether respondents "had notice or actual knowledge" of the bankruptcy proceedings. On April 2, 1936, a judgment was rendered in the superior court in an action entitled "Marian S. Schmidt and Carl Bender, as executors of the last will and testament of Herbert A. Schmidt, deceased, and Marian S. Schmidt, individually, plaintiffs, vs. Fletcher Hamilton, defendant" in the sum of $4,019.45. Marian S. Schmidt thereafter became Marian S. Dill, though the date of her remarriage is not disclosed. On June 21, 1937, Hamilton filed a petition in bankruptcy in the San Francisco office of the United States District Court in which there was entered in the schedule of debts the following: "Marian Schmidt and Carl Bender, San Francisco, Calif.

Judgment Superior Court, S. F. 262397—$4019.45 Judgment Municipal Court S. F. 12564—1300.00 Judgment Municipal Court S. F. 2083—1999.99.'' (The present action is one to enforce judgment No. 262397.) The schedule did not specify the "street and number of the residence" of the creditors and these were unknown to the bankrupt, but the schedule did not recite that they were unknown to him. It was agreed that both plaintiffs would testify that they had no "actual knowledge" of the filing of the bankruptcy proceedings; that they acquired knowledge of the proceedings on March 6, 1942, when Hamilton filed his answer in this action setting up the pleading of a discharge of the debt through the decree in bankruptcy.

The notice of the first meeting of creditors was duly mailed to all the creditors, including Marian S. Schmidt and Carl Bender, by depositing copies thereof in the U. S. postoffice at San Francisco enclosed in envelopes franked by notice of official business and addressed to the place of residence appearing in the schedule. The notices were mailed first class and the envelopes contained the return address of the sender—the referee in bankruptcy. The file in the bankruptcy proceeding does not disclose any returned notices addressed to these plaintiffs, but does contain a returned envelope and notice which had been mailed to another creditor at an address in Porterville, California.

It was stipulated that neither Marian S. Schmidt nor Carl Bender were listed in the telephone directory of San Francisco at the time when the schedule was filed; that a "Mrs. Herbert A. Schmidt" was listed, and that a "Carl Bender" was listed in a supplement to the San Francisco directory under "Other Cities and Towns." No stipulation was made, and no proof was offered that these were the same parties as those noted in the schedule. The petitioner was away from San Francisco at the time he prepared the schedule and did not have access to a city directory; he did not know either Carl Bender or Marian S. Schmidt personally, and did not recall the names or the addresses of their attorneys who appeared in the proceedings wherein the judgments were entered. On July 3, 1938, notices of hearing of the petition for discharge of the bankrupt were duly mailed in the same manner as the first notices were mailed, but none of the notices mailed to these creditors was returned to the referee, though the official return address was stamped on the envelopes.

On this stipulation of facts the trial court found that the schedule in the bankruptcy proceeding did not include the "residence" of these creditors and that they did not have "actual or constructive notice of the filing of the petition in bankruptcy."

On the specific question whether a debt is "duly scheduled" under sections 7 and 17 of the Bankruptcy Act all the authorities cited hold that the designation of the city of residence, without the street and number, is sufficient to meet the terms of the act. The leading case is *Kreitlein* v. *Ferger*, 238 U.S. 21 [35 S.Ct. 685, 59 L.Ed. 1184] where the only address given in the schedule was "C. Ferger, Indianapolis." In a suit in the state court to enforce a prior judgment against the bankrupt it was contended that the listing was insufficient because it failed to give the street and number of the creditor, and because it used the initial "C" instead of the full name "Charles" in giving the name of the creditor.

The Supreme Court rejected both contentions saying:

"It is said that Kreitlein might have examined the directory, but the suggestion presupposes that at the time of making the schedule the bankrupt had access to a directory and overlooks the fact that even if the address given therein was correct when made, the creditor may have moved before the book was issued so that if notice was mailed to an incorrect street address the creditor might contend that such specific address was not required by statute and that the burden of the mistake was cast on the bankrupt. We are here dealing with a general rule applicable to cases where the parties reside in different parts of the country as well as to instances where they lived in the same city. The rule is the same as to both. There certainly is no presumption that bankrupts have access to directories containing the street addresses of their creditors throughout the land; and, if the fact was essential, the question as to whether the bankrupt had access to a directory, or whether it was correct, were matters of proof, none of which was made in the present case."

As to the specific question involved here the court said:

"Both as to the use of initials and omission of street address the Act must be given a general construction and in the light of the fact that letters directed to persons by their initials are constantly, properly and promptly delivered in the greatest cities of the country even when the street number is not given. When it is considered that the schedule must

not only include claims of recent origin but debts which have accrued many years before and where the creditor may have changed his residence, it becomes evident that to lay down the general rule that the schedule must give the name of the creditor and the city and street number of the residence of those living in the largest cities would, in a multitude of cases, destroy the beneficent effect of the Bankruptcy Act."

The rule of the Kreitlein case was followed in *Kundert* v. *Riese*, 225 Wis. 276 [274 N.W. 286] ; *Claflin* v. *Wolff*, 88 N.J.L. 308 [96 A. 73] ; *Freedman* v. *Cooper*, 126 N.J.L. 177 [17 A.2d 609] ; Collier on Bankruptcy, 13th ed. page 631; and is recognized in *Brown* v. *Tropp*, 106 Cal.App. 605 [289 P. 648]. No case has been cited and we have found none that holds that a failure to give the street and number of the creditor's residence renders the schedule invalid or, ipso facto, effects the result that the debt was not "duly scheduled" within the terms of the Bankruptcy Act. Authorities cited by respondent are in apparent conflict, but, upon examination, are readily distinguishable. *Brown* v. *Tropp, supra; Van Denburgh* v. *Goodfellow*, 19 Cal.2d 217 [120 P.2d 20] ; and *Marlenee* v. *Warkentin*, 71 Cal.App.2d 177 [162 P.2d 321] are all cases where the bankrupt gave the wrong address. No one of them holds that a compliance with the Bankruptcy Act requires the "street and number" to be given. The Van Denburgh case rests upon this solid ground: (p. 222) "It is well settled that a debt is not duly scheduled if the bankrupt has listed the creditor's address incorrectly. (See cases cited under 11 U.S.C.A., sec. 25, note 23; *Brown* v. *Tropp*, 106 Cal. App. 605 [289 P. 648] ; *Parker* v. *Murphy*, 215 Mass. 72 [102 N.E. 85, 87] ; *In re D'Alessio*, 24 F.Supp. 563.)" The judgment therein was reversed because "there is no evidence to support the finding of the trial court that plaintiff's address was properly set forth in defendants' bankruptcy schedules. The evidence establishes without contradiction that 1010 Title Guarantee Building was not the address of plaintiff, or of the estate of Mrs. Clark; or of plaintiff's attorneys. Since defendants could easily have determined plaintiff's correct address, their good faith in listing the debt is immaterial. (See *Fible* v. *Crabb*, 129 Ky. 461 [112 S.W. 576].)"

In the Marlenee case the schedule failed to show the residence of the creditor, and failed to state that such residence was unknown to the bankrupt. The trial court found that such residence was well known to the bankrupt and that his

failure to state it in the schedule was deliberate. The judgment was affirmed on the ground that this failure of the bankrupt was a noncompliance with the Bankruptcy Act.

Other authorities are cited to the point that the bankrupt must use reasonable diligence to ascertain the correct address of the creditor, but, like those preceding, these authorities involve cases where either no address or an incorrect address was given. No one of these holds that the "street and number" is required as a matter of law. The rule of all these cases rests squarely on fraud. If the bankrupt purposely gives a false address, or refrains from giving any address when the true address is known to him the decisions hold that such act is done for the fraudulent purpose of preventing proper notification to the creditor.

 Respondents argue that appellant did not use due diligence to ascertain the "street and number" of the residence of the creditors. It is said in argument that Marian S. Schmidt was the widow of Herbert A. Schmidt, but there was no proof of that fact, whereas it was stipulated that appellant did not know either Marian S. Schmidt or Carl Bender. Neither name appeared in the San Francisco telephone directory. The name of Herbert A. Schmidt did appear in that directory. But Marian S. Schmidt may have been a sister or a daughter of the deceased, or one unrelated to him. Hence, if the bankrupt had guessed wrong in giving her address as the street and number listed under the name of Herbert A. Schmidt he would have been confronted with the same difficulty as that found in the Van Denburgh case (*supra*) where it was held that a wrong address vitiated the notice. Since the bankrupt chose to follow the rule of the United States Supreme Court announced in the Kreitlein case (*supra*) he cannot be charged with fraud in the preparation of his schedule.

 Appellant argues that under section 39 of the Bankruptcy Act the ruling of the referee that the residences as given in the schedule are sufficient is a judicial determination of that issue binding upon the state courts. He cites *Claflin* v. *Wolff*, 88 N.J.L. 308 (*supra*) 77 [of 96 A.], where the New Jersey court said: ". . . we must not lose sight of the fact that section 39, subdivision 2, of the Bankruptcy Act requires the referee to examine all schedules of property and lists of creditors filed by bankrupts, and cause such as are incomplete and defective to be amended. Obviously this provision was

intended that the referee in bankruptcy shall judicially pass upon, among other things, the completeness of the listing of the creditors, the addresses given by the bankrupt in the schedule, and if found to be incomplete to cause the same to be amended. For it is to be borne in mind that the bankruptcy act casts the duty of giving the various notices required to be given to creditors in the various stages of the bankruptcy proceedings upon the referee.''

There seems to be a solid foundation for this rule. Since the act requires the referee to ''examine all schedules . . . , and cause such as are incomplete and defective to be amended'' (11 U.S.C.A. § 67) the presumption follows that this duty was performed. If in that capacity the referee followed the rule of the United States Supreme Court announced in the Kreitlein case and found that the listing of the creditors' residences as ''San Francisco, Calif.'' was sufficient, without the addition of the street and number, that finding should control the state courts, particularly where there is no evidence of fraud. But it is not necessary for us to hold that the ruling of the referee is res judicata of the issue of the sufficiency of the schedule. Its sufficiency has been determined by the rule in the Kreitlein case.

The appellant further argues that respondents are presumed to have had notice of the bankruptcy proceedings, though they may have been without actual knowledge of them. The conceded facts are that the notices were duly mailed to the creditors at the addresses given in the schedule. It was stipulated that they would testify that they did not ''receive'' the notices and that they had no ''actual knowledge'' of the proceedings. The evidence was that the letters were duly directed and mailed. From this the appellant argues the presumption follows that they were ''received in the regular course of the mail.'' (Code Civ. Proc., § 1963, subd. 24.) Respondents' testimony that they did not ''receive'' the notices is not necessarily in conflict with the presumption that the envelope and its contents were received at the addresses given because they may not have opened the envelopes to examine their contents. But the point is not important since, if the debt is duly scheduled, the creditor is charged with *constructive* notice of the proceedings, though he may have failed to have received the written notice mailed to him. (8 C.J.S., p. 1531, § 577.) Hence, assuming that the trial court properly found that respondents did not have actual

knowledge of the bankrupt proceedings, it was in error when it found that they did not have constructive notice. All the authorities hold that a proper scheduling of the debt is constructive notice to the creditor.

The respondents suggest that there may have been a defect in the schedule in that Marian S. Schmidt and Carl Bender are listed as creditors individually, without designation of their representative capacities as executors. The judgment which is the basis of the debt was taken in the name of "Marian S. Schmidt and Carl Bender, as executors of the last will and testament of Herbert A. Schmidt, deceased, and Marian S. Schmidt, individually, plaintiffs, vs. Fletcher Hamilton, defendant." The complaint herein recites that "Marian S. Dill, formerly Marian S. Schmidt, individually is entitled to all of the proceeds of the said judgment . . . by reason of . . . certain order and orders made by the" court in the probate of said estate. It cannot be questioned that the schedule was sufficient as to Mrs. Marian S. Schmidt in her individual capacity. From this appellant argues that the schedule was sufficient as to all parties under the rule that notice to one of several executors, administrators, trustees, coplaintiffs or codefendants is notice to all the others. (46 C.J. 563; 21 Am. Jur. 802; 115 A.L.R. 390 (Ann.).) But it should be noted that if this be accepted as a rule of decision there is scant authority for it, particularly when it is applied to joint plaintiffs or joint defendants. We prefer to rest our decision upon the firmer ground that since the real and only party having any interest in the judgment had been properly scheduled under the rule of the Kreitlein case, she must be presumed to have had constructive notice of the bankruptcy proceedings and is now foreclosed from asserting that the debt of the judgment was not discharged.

The judgment is reversed with directions to enter judgment for the defendant.

Goodell, J., and Dooling, J., concurred.